**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 23-cr-00389-IM-2 |
| v. | **OPINION AND ORDER DENYING DEFENDANT JOSE ROLANDO MIRALDA-GUTIERREZ'S MOTION TO SUPPRESS** |
| **JOSE ROLANDO MIRALDA-GUTIERREZ**, | |
| Defendant. | |

Nicole M. Bockelman, U.S. Attorney's Office, District of Oregon, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Attorney for the United States.

Anna Maria Belesiotis, Federal Public Defender, 101 SW Main Street, Suite 1700, Portland, OR 97204. Attorney for Defendant Jose Rolando Miralda-Gutierrez.

**IMMERGUT, District Judge.**

Before this Court is Defendant Jose Rolando Miralda-Gutierrez's Motion to Suppress Mr. Miralda-Gutierrez's Statements to Law Enforcement ("Mot."), ECF 44. Defendant contends that he did not knowingly, voluntarily, and intelligently waive his *Miranda* rights before making incriminating statements in response to questioning from federal agents. *Id.* at 1–2. Defendant accordingly moves to suppress those statements at trial. *Id.* The Government opposes the Motion.

PAGE 1 – OPINION AND ORDER DENYING DEFENDANT MIRALDA-GUTIERREZ'S MOTION TO SUPPRESS

*See* Government's Response ("Resp."), ECF 52. To resolve Defendant's Motion, this Court held

an evidentiary hearing on September 5, 2024. *See* Minutes of Proceedings, ECF 61.

After considering the parties' submissions and evidence, this Court DENIES the Motion

to Suppress. The Government has met its burden of proving that Defendant's *Miranda* waiver

was knowing, voluntary, and intelligent. Defendant's statements are therefore admissible at trial.

## LEGAL STANDARDS

Since the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), police

officers during custodial interrogations have been required to "inform a [defendant] that 'he has

the right to remain silent, that anything he says can be used against him in a court of law, that he

has the right to the presence of an attorney, and that if he cannot afford an attorney one will be

appointed for him prior to any questioning.'" *Vega v. Tekoh*, 142 S. Ct. 2095, 2099-100 (2022)

(quoting *Miranda*, 384 U.S. at 479). "To admit an inculpatory statement made by a defendant

during custodial interrogation, the defendant's 'waiver of *Miranda* rights must be voluntary,

knowing, and intelligent.'" *United States v. Shi*, 525 F.3d 709, 727 (9th Cir. 2008) (quoting

*United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998)). "A valid waiver of *Miranda* rights

depends upon the 'totality of the circumstances including the background, experience, and

conduct of [the] defendant.'" *Id.* (quoting *Garibay*, 143 F.3d at 536). The prosecution bears the

burden of proof, and there is a presumption against waiver. *Id.* at 727-28.

## BACKGROUND

Defendant and the Government agree on the essential facts of what occurred. The

following description draws on the parties' briefing as well as translated transcripts of the

custodial interrogation that was held that day. The Government and Defendant have both filed

translated transcripts of the custodial interrogation. The transcripts do not differ in substance,[1]

but because they differ in certain respects—such as their use of passive or active voice or in their

syntax—this Court will quote and cite both transcripts in recounting the interaction between

Defendant and the FBI Special Agents.[2]

## A.  Defendant's Custodial Interrogation

On November 2, 2023, federal agents and joint federal-state task force officers served a

search warrant at a residence in Portland, Oregon. The agents detained Defendant in the detached

garage while they searched the residence. In Defendant's bedroom, the agents found 36,000

fentanyl pills, shrink wrap baggies with fentanyl residue, and $13,279 in cash.

After the search, FBI Special Agents Nicholas Myers, Gabriel Montero, and Grant Taylor

interviewed Defendant. *See* Public Defender's Transcript ("PD Trans."), ECF 44-1, Ex. A; FBI

Transcript ("FBI Trans."), ECF 52-4, Ex. 4. Agent Montero translated between Spanish and

English because Defendant could only communicate in Spanish.

Agent Myers informed Defendant that he was under arrest. PD Trans., ECF 44-1, Ex. A

at 2; FBI Trans., ECF 52-4, Ex. 4 at 4. Agent Montero explained to Defendant that the Agents

would read Defendant his rights and then explain why he was under arrest. PD Trans., ECF 44-1,

Ex. A at 2; FBI Trans., ECF 52-4, Ex. 4 at 4. Agent Montero then read Defendant's *Miranda*

---

[1] In response to this Court's inquiry at the motion to suppress hearing, both parties agreed that there were no significant differences between the translations of the transcripts. *See* Minutes of Proceedings, ECF 61.

[2] This Court may consider hearsay to resolve Defendant's Motion. *See* Fed. R. Evid. 104(a), 1101(d)(1); *see also United States v. Hong*, 433 F. App'x 541, 543 (9th Cir. 2011) (mem.) (citing *United States v. Raddatz*, 447 U.S. 667, 679 (1980)).

rights to him, as reproduced in full below:

| Public Defender's Transcript, ECF 44-1, Ex. A at 3 | FBI's Transcript, ECF 52-4, Ex. 4 at 4–5 |
| --- | --- |
| Okay. Before asking you any questions, you must understand your right'. You have a right to remain silent. Everything you d- say can be used against you in court. You have the right to talk to an attorney to give you advice before we ask you any questions. You have a right to have an attorney present during your interrogation. If you . . . can't pay for an attorney, you will . . . be assigned one, uh . . . before any interrogatory is conducted if you so desire, if you decide to answer the questions right now without the presence of an attorney, you have a right to not answer at any time. Do you understand the rights? | Well, before asking you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to speak to a lawyer for advice before we ask you any questions. You have the right to have a lawyer present during questioning. If you cannot pay for a lawyer, one will be appointed for you . . . uh, before any questions, if you wish. If you decide to answer the questions now, without a lawyer present, you have the right to not answer at any time. Do you understand the rights? |

In response to these questions, Defendant answered, "Okay." PD Trans., ECF 44-1, Ex. A at 3; FBI Trans., ECF 52-4, Ex. 4 at 5. Agent Montero then asked Defendant in Spanish if he would "proceed to talk" or "proceed to speak" with the Agents. PD Trans., ECF 44-1, Ex. A at 3; FBI Trans., ECF 52-4, Ex. 4 at 5. Defendant said, "Yes, it's all right" or "Yes, that's fine." PD Trans., ECF 44-1, Ex. A at 3; FBI Trans., ECF 52-4, Ex. 4 at 5. Agent Montero then asked Defendant to initial his name on the *Miranda* rights waiver form, but Defendant expressed uncertainty about how to initial his name; after writing his first name, Defendant admitted that he could neither write his last name nor read. PD Trans., ECF 44-1, Ex. A at 3–5; FBI Trans., ECF 52-4, Ex. 4 at 5–7.

Agent Montero next asked Defendant "But do you understand what I read to you?" or "But you do understand what I read to you?" PD Trans., ECF 44-1, Ex. A at 5; FBI Trans., ECF 52-4, Ex. 4 at 7. To this, Defendant answered "yes." PD Trans., ECF 44-1, Ex. A at 5; FBI

Trans., ECF 52-4, Ex. 4 at 7. Agent Montero asked again, "You understand your rights, true?" or "You understand your rights, correct?" PD Trans., ECF 44-1, Ex. A at 5; FBI Trans., ECF 52-4, Ex. 4 at 7. Defendant again answered "yes." PD Trans., ECF 44-1, Ex. A at 5; FBI Trans., ECF 52-4, Ex. 4 at 7.

Agent Montero then said to Defendant, "That you're under arrest, but that you don't have the obligation to talk to us" or "That you are under arrest, but you are not obligated to speak to us." PD Trans., ECF 44-1, Ex. A at 6; FBI Trans., ECF 52-4, Ex. 4 at 7. Defendant responded, "No, it's alright" or "No, that's fine." PD Trans., ECF 44-1, Ex. A at 6; FBI Trans., ECF 52-4, Ex. 4 at 7. Agent Montero then said, "It's only voluntary, if you want to" or "It's only voluntary, if you want." PD Trans., ECF 44-1, Ex. A at 6; FBI Trans., ECF 52-4, Ex. 4 at 7. And Defendant answered "No, it's all right" or "No, it's fine." PD Trans., ECF 44-1, Ex. A at 6; FBI Trans., ECF 52-4, Ex. 4 at 8. From there, Defendant provided the agents with inculpatory statements.

**B.  Procedural History**

On December 5, 2023, Defendant was indicted on one count of conspiracy to distribute fentanyl under 21 U.S.C. § 846 and one count of possession with intent to distribute fentanyl under 21 U.S.C. § 841(a)(1), (b)(1)(C). Redacted Indictment, ECF 14. On May 29, 2024, Defendant filed the instant Motion to Suppress. Mot., ECF 44. The Government responded on June 12, 2024. Resp., ECF 52. Defendant filed a reply brief on July 19, 2024. Defendant's Reply ("Reply"), ECF 56. This Court held an evidentiary hearing on September 5, 2024. The Government presented testimony from three law enforcement officers about Defendant's communications with the officers. Minutes of Proceedings, ECF 61. Defendant presented the testimony of psychologist Dr. Karen Hernandez about Defendant's language and cognitive abilities. *Id.*

**DISCUSSION**

With the benefit of the parties' briefing and evidence, as well as the testimony and argument presented at the hearing on this motion, this Court denies Defendant's Motion to Suppress. When determining whether a foreign national voluntarily, knowingly, and intelligently waived his *Miranda* rights, courts within the Ninth Circuit must consider six factors as part of a "totality of the circumstances" inquiry: (1) whether the defendant signed a written waiver; (2) whether advice of rights was in the defendant's native language; (3) whether the defendant appeared to understand those rights; (4) whether the defendant had the assistance of a translator; (5) whether the defendant's rights were explained painstakingly; and (6) whether the defendant had experience with the American criminal justice system. *United States v. Amano*, 229 F.3d 801, 804–05 (9th Cir. 2000). Defendant contends that his statements should be suppressed because he did not sign a waiver, has poor language skills and a low IQ, did not have his rights read in sufficient detail, and lacked experience with the American criminal justice system.

This Court disagrees. Viewed together, each of the *Amano* factors shows that Defendant's *Miranda* waiver was voluntary, knowing, and intelligent. Defendant attempted to sign the written waiver—and succeeded in writing his first name—after indicating that he understood the rights as read to him by Agent Montero. Agent Montero, an FBI-certified Spanish speaker and translator, read Defendant his rights in Spanish and, at least twice, Defendant stated that he understood these rights. Nowhere in either transcript does Defendant indicate that he did not understand what he was being told. Although Defendant willingly informed the agents when he could not read or write his own name, he never expressed any similar confusion or a lack of understanding to the agents about his rights. Further, Defendant's rights were read verbatim in

more detail than *Miranda* itself requires, and Agent Montero followed up by explaining to

Defendant that he did not have to speak to the Agents and that whether he did so was voluntary.

Finally, Defendant has had three prior experiences with the American criminal justice

system. The parties presented evidence for the first time at the hearing on this motion that

Defendant was previously read his *Miranda* rights in Spanish on February 8, 2022. *See* Minutes

of Proceedings, ECF 61. On that occasion, paramedics loaded Defendant into an ambulance,

suspecting he had ingested narcotics. *Id.* Officer Ramos read Defendant his *Miranda* rights in

Spanish, and Defendant nodded to indicate his understanding. *Id.* Second, on December 20,

2022, Defendant was a passenger in a car that was searched by Clackamas County sheriff's

deputies. *See* ECF 52-1, Ex. 1. During this search, Defendant was handcuffed and read his

*Miranda* rights in Spanish,[3] gave the police a false name, spoke in Spanish with an officer, and

signed Spanish-language consent forms authorizing a search of the car and his cellphone. *Id.* at

4–6. Finally, at the hearing, the Government introduced a certified copy of a January 19, 2023

court order appointing counsel for Defendant, who had been charged in Multnomah County

Circuit Court with one count of delivering cocaine within 1,000 feet of a school.[4] ECF 63-6, Ex.

13. The Government also introduced an accompanying release order and agreement signed by

---

[3] Defendant points out that during the December 2022 stop, he was initially Mirandized in English. *See* Reply, ECF 56 at 10. But body camera footage of the incident, as well as the testimony of Officer Ramos and Sergeant Nall at the hearing, shows that Defendant was Mirandized a second time using the Google Translate application on Sergeant Nall's phone, which translated the *Miranda* rights into Spanish and played the translated version through the phone's speaker. *See* ECF 57, Ex. D at 19:44:46–19:45:17; Minutes of Proceedings, ECF 61. At the hearing, Officer Ramos and Sergeant Nall also testified that Sergeant Nall later confirmed the accuracy of the translation with the assistance of Officer Ramos, a native Spanish speaker. *See* Minutes of Proceeding, ECF 61.

[4] *State v. Miralda-Gutierrez*, No. 23-CR-02794 (Multnomah Cnty. Cir. Ct. filed Jan. 19, 2023).

Defendant on the same day. ECF 63-7, Ex. 14. These three incidents are more than sufficient to show that Defendant had prior experience with the American criminal justice system. Thus, every *Amano* factor applied here indicates that Defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights before speaking to the FBI Agents on November 2, 2023.[5]

Both the Ninth Circuit and its district courts have reached the same conclusion in similar, though not identical, circumstances where the defendant—after being read his *Miranda* rights in a language he understood—signaled his comprehension, signed or attempted to sign a waiver, and continued to converse with the officers. *See, e.g.*, *United States v. Martinez*, 588 F.2d 1227, 1235 (9th Cir. 1978) (holding that the defendant understood and knowingly waived his rights based on testimony that he appeared to understand his rights as they were read, that he signed a written Spanish-language waiver form (although he disputed whether he read it before signing), and that he continued to answer questions in Spanish from the same officer who read him his rights); *United States v. Bernard S.*, 795 F.2d 749, 752–53 (9th Cir. 1986) (holding that the defendant validly waived his rights because he spoke some English, "stated that he understood his rights," signed a written waiver, and "at no time . . . indicate[d] that he did not understand his rights"); *United States v. Martinez-Camargo*, 765 F. App'x 205, 208 n.1 (9th Cir. 2019) (mem.)

---

[5] Defendant makes much of the fact that he initially stated "Okay" in response to the FBI agent's question of whether he understood his rights. Reply, ECF 56 at 3. But this contention simply ignores the other instances when Defendant unequivocally signaled that he understood what he had been told by the FBI agents. *See, e.g.*, PD Trans., ECF 44-1, Ex. A at 5 (responding "Yes" to the question "[Y]ou do understand what I read to you?"). Even if Defendant's initial "Okay" could be construed as expressing confusion, Defendant's contention would be unavailing, because "initially expressing confusion about the *Miranda* rights is not enough to show an invalid waiver where the defendant later unequivocally states that they understood the rights." *United States v. Munoz-Perez*, No. 21-mj-03297, 2024 WL 291316, at *9 (S.D. Cal. Jan. 25, 2024).

(holding that a *Miranda* waiver was valid where, "at the beginning of the interview, [the defendant] was advised of her *Miranda* rights in her native language, was offered the help of a translator, appeared to understand her rights, responded affirmatively to [an officer's] questions about comprehension, . . . signed a written waiver in her native language," and "made no statement during the provision of the *Miranda* warnings themselves that demonstrated a lack of understanding of the warnings or of her rights"); *United States v. Munoz-Perez*, No. 21-mj-03297, 2024 WL 291316, at *9 (S.D. Cal. Jan. 25, 2024) (holding that a *Miranda* waiver was valid because, "although [the defendant] was young and without a criminal history and the transcript manifests that he was sometimes confused by [the agent's] questioning, these factors do not overcome the fact that he was interviewed in his native language, was read the *Miranda* rights twice, agreed that he understood his rights, and signed a *Miranda* waiver"). This case law confirms that Defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights.

Defendant's contrary arguments are unavailing. Defendant contends, first, that even though he was read his rights from a standard *Miranda* consent form, the FBI Agents "ought to have orally reviewed each of the listed rights" on the form "to make sure he understood them." Mot., ECF 44 at 6. The Ninth Circuit has held, however, that "[t]he police can always be certain that *Miranda* has been satisfied if they simply read the defendant his rights from a prepared card." *United States v. Loucious*, 847 F.3d 1146, 1151 (9th Cir. 2017) (alteration in original). "A verbatim reading would, in all instances, preclude claims" that a *Miranda* warning lacked specificity. *Id.* Defendant was read his rights verbatim in Spanish—standing alone, this is sufficient explanation under *Miranda*. But in addition to having his rights read verbatim, Defendant had several of them repeated to him, and in response, Defendant expressed that he understood what he was being told. All of this was more than enough to "reasonably convey" the

*Miranda* rights to Defendant. *Florida v. Powell*, 559 U.S. 50, 60 (2010) ("The inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by *Miranda*." (citation, brackets, and internal quotation marks omitted)).

For similar reasons, the fact that FBI Agent Montero did not translate every word does not invalidate Defendant's waiver. Mot., ECF 44 at 6–7. This argument sidesteps that Agent Montero read Defendant's *Miranda* rights to him from a form that was more detailed than *Miranda* itself. Any additional explanation would have been exactly that: additional information on top of the essential information required by *Miranda* and its progeny. *See Powell*, 559 U.S. at 60 ("The four warnings *Miranda* requires are invariable, but this Court has not dictated the words in which the essential information must be conveyed."); *California v. Prysock*, 453 U.S. 355, 359 (1981) (per curiam) (holding that no "talismanic incantation" of *Miranda* warnings is required).

Relying on the expert testimony of Dr. Karen Hernandez, Defendant argues that he could not have voluntarily waived his *Miranda* rights because he lacked both the linguistic and cognitive ability to understand what FBI Agent Montero said to him. Mot., ECF 44 at 8–10. Dr. Hernandez testified at the evidentiary hearing that Defendant tested very poorly on verbal comprehension tests and did not understand the Spanish word "derecho" ("right" in English). *See* Hernandez Expert Report, ECF 48 at 4. Dr. Hernandez also concluded that Defendant was "unsure" of the meaning of "Todo lo que usted diga podra ser usada contra usted en un tribunal"—in English, "Anything you say can and will be used against you in a court of law." *Id.* Dr. Hernandez relied on the fact that Defendant has only had three years of formal schooling; the fact that Defendant still called his mother every day; and Defendant's illiteracy in concluding

that Defendant "does not appear to have a good appreciation of the totality of the Miranda rights." *Id.* at 5–6; *see* Minutes of Proceedings, ECF 61.

This Court gives little weight to Dr. Hernandez's expert opinion, which is unpersuasive for several reasons. First, as Dr. Hernandez testified at the hearing, neither the Miranda Rights Comprehension Instruments (MRCI) nor the Gudjonsson Suggestibility Scale she relied on are designed for Spanish-speaking subjects, so she could only use the tests as guides which she translated into Spanish. *See* Minutes of Proceedings, ECF 61. As a result, neither test produced any data or raw scores with which to compare how she evaluated Defendant. *Id*. Dr. Hernandez also conceded that the medical community has taken issue with some of the terminology used in the MRCI test, a concern that may be amplified when the test is translated into Spanish. *Id.*

Most importantly, Dr. Hernandez's opinion stems exclusively from unreliable self-reporting by Defendant. Many of Dr. Hernandez's observations merely paraphrase or relay unsworn hearsay statements Defendant made to her during their interaction. Defendant knew the purpose of his meeting with Dr. Hernandez and that it was part of his criminal defense. Hernandez Expert Report, ECF 48 at 1. Moreover, Defendant misinformed Dr. Hernandez at least once during the interview, telling her that he had never before been "in trouble with the law" when in fact he had been arrested by the police before November 2023. *Id.* at 2. Accordingly, because Defendant's statements to Dr. Hernandez were unreliable, Dr. Hernandez's opinion likewise lacks reliability.

In addition, Dr. Hernandez opines that Defendant does not seem to understand the word "derecho." This Court is not persuaded. For one thing, Dr. Hernandez's report itself uses this word: her report states that, prior to interviewing Defendant, she informed him of his "right" ("derecho" in Spanish) not to reply to any of her questions. *See* Hernandez Expert Report, ECF

48 at 1 ("The examinee was informed that the assessment was voluntary, and that he had the right not to reply to any of the evaluator's questions."). Not only did Dr. Hernandez use the word "right" with Defendant in evaluating him, but the word was used in a context strikingly similar to *Miranda*: his right to speak voluntarily or remain silent. In any case, Defendant's focus on this point is misdirected. Agent Montero did not solely ask Defendant whether he understood his "rights" or "derechos." Rather, Agent Montero asked Defendant, "But you do understand what I read to you?" to which Defendant responded "Sí" or "Yes." PD Trans., ECF 44-1, Ex. A at 5; FBI Trans., ECF 52-4, Ex. 4 at 7. And without using the word "derecho," Agent Montero told Defendant that he did not have an obligation to talk to the Agents. PD Trans., ECF 44-1, Ex. A at 6; FBI Trans., ECF 52-4, Ex. 4 at 7.

Finally, Dr. Hernandez opines that Defendant "failed to grasp the significance of talking to the authorities without invoking his rights." Hernandez Expert Report, ECF 48 at 6. But as she testified at the hearing, Dr. Hernandez reached this conclusion without knowing that Defendant had on several occasions lied to police about his identity and age, because Defendant never told her that. *See* Minutes of Proceedings, ECF 61. And the factual record undermines this assertion. During his December 2022 run-in with law enforcement, Defendant purposefully gave a false name, which indicates that he had a sufficiently sophisticated understanding of the consequences of running afoul of the American justice system. Further, this Court heard testimony at the hearing that Defendant allegedly carried out several high-level drug transactions, which required confirming that he had received a specified number of pills, going to specific locations at designated times, and collecting specific amounts of cash from buyers. *See* Minutes of Proceedings, ECF 61. And in the November 2, 2023 interview, Defendant describes—coherently and responsively—having purchased a car only three weeks prior, having paid two months of

PAGE 12 – OPINION AND ORDER DENYING DEFENDANT MIRALDA-GUTIERREZ'S MOTION TO SUPPRESS

rent, and having sold pills with and for co-conspirators, actions which imply an ability to understand general rights and responsibilities. *See* ECF 44-2, Ex. B. This Court is persuaded that, if Defendant can allegedly execute and recount high-level drug-trafficking schemes, he can grasp the significance of talking to authorities. In sum, this Court accords little weight to Dr. Hernandez's opinion.

Even if Dr. Hernandez's opinion were reliable, Defendant's contentions would still fail. The Ninth Circuit rejected an argument akin to Defendant's in *United States v. Bautista-Avila*, 6 F.3d 1360 (9th Cir. 1993). There, the defendant argued that he lacked the ability to understand his *Miranda* rights and presented "expert testimony that for [the defendant], who had no prior experience with the United States judicial system, had only a sixth grade Mexican education, and had been a manual laborer all his life, 'there is almost an impossibility to grasp abstractions.'" *Id.* at 1365. Nonetheless, the Ninth Circuit held that the defendant had voluntarily waived his *Miranda* rights, noting that the defendant "indicated that he understood his rights after they were explained to him." *Id.* at 1366; *see also United States v. Hurtado*, 21 F. Supp. 3d 1036, 1041–42 (N.D. Cal. 2014) (citing *Bautista-Avila* and explaining that the fact that the defendant "had only a middle school education in Mexico" did "not establish that [the defendant] failed to understand his rights"); *Ward v. Almager*, No. SACV 06-0936, 2008 WL 5216296, at *7 n.7 (C.D. Cal. Dec. 12, 2008) (citing *Bautista-Avila* and explaining that "Petitioner's argument that . . . he has a low level of education . . . is unavailing given that he stated that he understood his *Miranda* rights when they were read to him").

The facts here are similar to *Bautista-Avila*. Defendant essentially contends that his lack of education and inability to understand difficult concepts means that he could not have understood his *Miranda* rights. But throughout his encounter with the FBI agents, Defendant

PAGE 13 – OPINION AND ORDER DENYING DEFENDANT MIRALDA-GUTIERREZ'S MOTION TO SUPPRESS

repeatedly affirmed that he understood his rights and did not tell the agents that he did not understand anything they had told him. Defendant "never indicated that he did not understand the questions being asked." *United States v. Vallejo*, 237 F.3d 1008, 1014 (9th Cir. 2001). Notably, he was willing to admit that he was illiterate; this Court does not find it credible that Defendant felt able to admit that he was unable to write or read his own name, but somehow lacked the ability to admit that he did not understand his *Miranda* rights. In sum, the evidence shows that Defendant received warnings that he could "comprehend and on which [he could] knowingly act." *United States v. San Juan-Cruz*, 314 F.3d 384, 387 (9th Cir. 2002); *see United States v. Gonzalez-Godinez*, 89 F.4th 1205, 1209–10 (9th Cir. 2024) (applying *San-Juan Cruz* to find that a *Miranda* waiver was sufficient).

While it is true that Defendant apparently has an IQ of 61, thus making "him susceptible to suggestion and coercion," *Rodriguez v. McDonald*, 872 F.3d 908, 923 (9th Cir. 2017), there is no evidence in the record that the FBI agents coerced or cajoled Defendant in any way. To the contrary, they told him repeatedly that he did not need to speak to them, asked Defendant if he understood what had been read to him, and accommodated Defendant's illiteracy. Further, each officer who testified at the hearing stated that Defendant was eager and willing to talk to them, and at no point did Defendant appear confused about what was happening. *See* Minutes of Proceedings, ECF 61. In light of these facts, as well as the circumstances described above, Defendant's IQ alone does not indicate that he did not knowingly, willingly, and voluntarily waive his *Miranda* rights. Rather, all six of the *Amano* factors have been satisfied, and there is no basis for suppressing Defendant's inculpatory statements.

**CONCLUSION**

The Government has met its burden of showing that Defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights. Accordingly, Defendant's Motion to Suppress, ECF 44, is DENIED. Defendant's inculpatory statements from November 2, 2023, are admissible at trial.

**IT IS SO ORDERED.**

DATED this 11th day of September, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge